UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

BETTY ANNE BURNS

VERSUS

BASS PRO DENHAM SPRINGS
DEVELOPMENT COMPANY, LLC.

CIVIL ACTION

NO. 10-674-BAJ-MJU

## RULING AND ORDER

This matter is before the Court on Third-Party Defendants', Corporate Green, LLC ("Corporate Green" or "Third-Party Defendant Corporate Green") and Lexington Insurance Company ("Lexington Insurance" or "Third-Party Defendant Lexington Insurance"), Motion for Summary Judgment (doc. 15). Defendant Bass Pro Shops of Denham Springs/Bass Pro Outdoor World, LP ("Bass Pro" or "Defendant Bass Pro" or "Third-Party Plaintiff") has filed an opposition to the Motion for Summary Judgment (doc. 16). This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## BACKGROUND

### I. Uncontested Facts

Pursuant to LR 56.1, Third-Party Defendants have submitted a statement of undisputed material facts (doc. 15-2). Defendant Bass Pro, however, has contested some of those facts, as permitted under LR 56.2 (doc. 16-4).

1

Therefore, pursuant to LR 56.2, certain material facts will be deemed admitted for purposes of this motion.[1]

The uncontested facts are as follows:

- Defendant Bass Pro alleges that on March 27, 2008, Defendant Bass Pro and Third-Party Defendant Corporate Green entered into a Purchase Order Agreement and Landscape Management Contract ("March 27, 2008 Agreement") pertaining to "landscape management" for the Bass Pro store at Denham Springs (doc. 16-4, at 2).[2]

- Both parties agree that Defendant Bass Pro and Corporate Green also entered into an Independent Contractor Agreement on May 6, 2008 ("May 6, 2008 Agreement") (doc. 8 ¶ 8).

- Defendant Bass Pro alleges that the Terms of Sale of the Purchase Order Agreement and Landscape Management Contract stated that Third-Party Defendant Corporate Green would:

    > "indemnify, defend and hold harmless Purchaser and its affiliates from all claims, demands, lawsuits, losses, costs, liabilities, penalties, damages, and expenses of every kind and description (including reasonable attorney fees and expenses), arising out of or resulting from...the negligent omissions...of [Corporate Green]...Subject to a reservation of rights letter, [Corporate Green] agrees to defend [Bass Pro] even if there are allegations of [Bass Pro]'s independent negligence (doc. 16-4, at 2).

---

[1] LR 56.2 provides:

> Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.

[2] While Defendant Bass Pro only discovered the March 27, 2008 agreement after filing their Third-Party Demand, it is consistent with their claim. Their Third-Party Demand asserted that, "upon information and belief" Third-Party Defendants' liability exceeded the liability espoused in the May 6, 2008 Agreement (doc. 8 ¶ 13).

2

- Both parties agree that Plaintiff in the above captioned matter filed suit against Defendant Bass Pro on June 30, 2010 and the case was subsequently removed to Federal Court (doc. 15-2 ¶¶ 1-2).

- Both parties agree that Plaintiff in the suit alleges that she sustained personal injuries in a fall that occurred at the Bass Pro store in Denham Springs, Louisiana (doc. 15-2 ¶ 3; Pet. for damages ¶ 3).

- According to Plaintiff, on or about July 31, 2009, Plaintiff was an invitee at the Bass Pro store in Denham Springs, Louisiana and "slipped and fell on a slime/algae puddle near a drain" (doc. 1-2, at 9).

- Defendant and Third Party Defendants agree that on May 7, 2012, Defendant Bass Pro filed, in its answer to Plaintiff's suit, a third-party demand against Corporate Green and its insurer Lexington Insurance (doc. 8, at 2–6). Defendant Bass Pro asserted:

  > "Upon information and belief, the…upkeep of the irrigation system in and around the accident site, was the responsibility of third-party defendant, Corporate Green. Accordingly, Corporate Green is obligated to indemnify Bass Pro for any damages arising out of the alleged injuries to Betty Burns caused by the fault of Corporate Green" (doc. 8, at 5).

- Defendant Bass Pro alleges that Corporate Green's "landscape management" extended beyond what was described in the May 6, 2008 contract and included landscaping and irrigation responsibilities (doc. 16-4, at 2).

- Defendant Bass Pro further asserts that, as Corporate Green's insurer, Lexington Insurance is required to provide coverage since Corporate Green assumed defense and indemnity obligations pursuant to an insured contract (doc. 16-4, at 4).

- According to Corporate Green, the May 6, 2008 contract was limited to the placement of landscaping rocks and any indemnity was contingent upon liability arising from work defined in the scope of work outlined in the agreement (doc. 15-2 ¶ 13–14).

3

- According to Corporate Green: 1) prior to performing the work at the Denham Springs Bass Pro store, Defendant Bass Pro poured concrete around the islands and created a curb; and 2) the areas where Corporate Green performed the work had no dirt or irrigation system (doc. 15-2 ¶ 15–16).

## ANALYSIS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable inferences in her favor. *Coleman v. Houston Independent School District*, 113 F.3d 528 (5th Cir. 1997). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2411, 91 L. Ed.2d 202 (1986).

The non-movant's burden, however, is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986).

Defendant Bass Pro, having been sued by Betty Burns relating to her alleged injuries sustained in a July 30, 2009 slip and fall on Bass Pro's premises, has filed a Third-Party Demand against Corporate Green, LLC and Lexington Insurance Company. In the demand, Defendant Bass Pro alleges that prior to the incident in question, Bass Pro and Corporate Green entered into an Independent Contractor Agreement (dated May 6, 2008) which provided in part (under Section 7) that Corporate Green, as contractor, has a duty to defend, hold harmless and indemnify Defendant Bass Pro in the current litigation (doc. 8 ¶¶ 8–16) According to Defendant Bass Pro, the May 6, 2008 Agreement represented only part of Third Party Defendants' indemnity obligations (doc. 8 ¶ 13).

## I. Conflict of Laws

The parties reference two contracts, a March 27, 2008 Purchase Order Agreement and Landscape Management Contract with a Louisiana choice of law provision, and a May 6, 2008 Independent Contractor Agreement with a Missouri choice of law provision. Both agreements are discussed in turn.

### A. The March 27, 2008 Agreement

Under the terms and conditions of the March 27, 2008 Agreement, the "agreement and all schedules" will be "construed and enforced according to the laws of the State of Louisiana" (doc. 16-1, at 6). Under Louisiana law, the general rules of contract interpretation apply to indemnity agreements. *Soverign Ins. Co. v. Texas Pipe Line Co.*, 488 So.2d 982 (La. 1986). Further, the

5

interpretation of a contract is the determination of the common intent of the parties. La. Civ. Code art. 2045. Louisiana courts have held that when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation should be made in search of the intent of the parties. La. Civ. Code art. 2046; *Berry v. Orleans Parish School Bd.*, 01-3283 (La.6/21/02), 830 So.2d 283; *Richard v. Borden, Inc.*, 597 So.2d 60 (La. App. 1 Cir.1992).

Here, the indemnity provision of the March 27, 2008 Purchase Order Agreement and Landscape Management Contract states:

> "Vendor will indemnify, defend and hold harmless Purchaser and its affiliates from all claims, demands, lawsuits, losses, costs, liabilities, penalties, damages, and expenses of every kind and description (including reasonable attorney fees and expenses), arising out of or resulting from...the negligent omissions...of [Corporate Green]...Subject to a reservation of rights letter, [Corporate Green] agrees to defend [Bass Pro] even if there are allegations of [Bass Pro]'s independent negligence (doc. 16-4, at 2).

The Court concludes that the indemnity provision and the words of this agreement demonstrate that the parties' intent was for Corporate Green, LLC, to assume liability for the circumstances alleged in the suit. The Court reaches this conclusion for several reasons.

First, the agreement indemnifies in favor of Defendant Bass Pro, and it does so in clear and explicit language. Second, under the agreement, Corporate Green arranged to conduct landscape management for the store and "maintain general liability" within its scope of service (doc. 16-1, at 5). The scope of service included the circumstances alleged in the complaint. Under part one of the

6

agreement, the "Scope of Work" included "mowing, litter removal," and "mulching" for areas defined in the plan (doc. 16-1, at 5, 9).

Further, contractor's services included:

"A site inspection will be performed two (2) times per week, at minimum. Trash, debris (including tree limbs), hazards shall be removed during each site visit...disposal shall be the responsibility of the contractor" (doc. 16-1, at 9).

Finally, Corporate Green was also responsible for: 1) any material discharged onto the paved surfaces (such as streets, parking lots, etc.) (doc. 16-1, at 10); 2) setting and adjusting irrigation times and modifications (doc. 16-1, at 11); and 3) cutting down any plant growth in the "cracks," "seams," and "joints of paved areas" (such as sidewalks, curbs, and driveways...) (doc. 16-1, at 10).[3]

Additionally, the scope of work provisions cite terms relevant to the circumstances alleged in the suit. The alleged "slime and algae puddle" could have been a number of items specified in the agreement such as residue from mulching, lawn care residue, or a discharge from the irrigation system. Nevertheless, the alleged condition constituted a "hazard" subject to Section 1.2 of the agreement for which Corporate Green was responsible (doc. 16-1, at 9). Because the March 27, 2008 Agreement encompasses liability for failure to

---

[3] The upkeep of the irrigation system is cited in the Third-Party Demand (doc. 8 ¶ 13). Further, Third-Party Defendant asserts that Plaintiff's slip was due to a failure to provide adequate drainage on the walkway outside of the Bass Pro store (doc.15-1, at 4). The Court presumes that the maintenance of the irrigation system is an alleged contributing factor to the alleged hazard on the day of the incident which gives rise to the suit.

maintain the "paved areas" free from hazards, Defendant Bass Pro has a legitimate Third-Party claim against Corporate Green for indemnity.[4]

## B. The May 6, 2008 Agreement

Because the May 6, 2008 Agreement contains a choice of laws provision requiring the application of Missouri law and the March 27, 2008 agreement selects Louisiana law, the Court must undertake a conflict of laws analysis[5]. A Federal court adjudicating a diversity matter applies the choice-of-law rules according to the state in which it sits. *Interfirst Bank Clifton v. Fernandez,* 853 F.2d 292, 294 (5th Cir. 1988). Here, Louisiana's choice-of-law provisions will govern the determination of which substantive law applies.

Under Louisiana law, contracting parties may choose the state law that will govern the agreement between them. *See Sentilles Optical Servs. v. Phillips,* 26,594 (La. App. 2 Cir. 3/1/95); 651 So. 2d 395, 398. The choice of state law made by the parties "will be given effect, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537." La. Civ. Code art. 3540. Furthermore, the party

---

[4] This ruling is not deemed to be a final judgment on the merits. Under Louisiana law, Corporate Green's duty to defend and indemnify under the agreement is premature and the Court withholds final judgment until liability has been found in the suit. The Supreme Court of Louisiana has held that "[a]n indemnitor is not liable under an indemnity agreement until the indemnitee 'actually makes payment or sustains loss.'" *Suire v. Lafayette City-Parish Consolidated Gov't,* 907 So.2d 37, 51 (La. 2005) (*quoting Meloy v. Conoco, Inc.,* 504 So.2d 833, 839 (La.1987)). Further, a "claim for defense under [an] indemnity agreement is premature under settled law, [if the] parties have not yet sustained any compensable loss." *Suire v. Lafayette City-Parish Consolidated Gov't,* 907 So.2d 37, 51 (La. 2005). However, Louisiana courts have also held that in circumstances where a claim for defense and indemnity is made before a judicial determination of fault, third-party plaintiffs may assert claims in a third-party demand, deferring resolution of the claim until the lawsuit concludes and liability is determined. *Id.*

[5] Section 11, "Arbitration/Controlling Law and Venue," of the May 6, 2008 Agreement selects Missouri law to govern disputes arising under the Agreement (doc. 15-4, at 4).

8

seeking to prove that the choice-of-law provision in a contract is invalid bears the burden of proof. *Delhomme Industries, Inc. v. Houston Beechcraft*, 669 F.2d 1049 (5th Cir. 1982).

Here, the parties chose to have Missouri law govern their May 6, 2008 Services Agreement (doc. 15-4, at 4). Thus, the threshold question, for purposes of determining which laws shall apply, is whether Defendant Bass Pro has shown that the application of Missouri law violates strong Louisiana public policy considerations. Defendant Bass Pro has not briefed this issue and the Court will presume that Bass Pro concedes that Missouri law applies to the May 6, 2008 Agreement[6].

### 1. Duty to Defend, Indemnify, and Hold Harmless

Under Missouri law, the applicable rules pertaining to the construction of contracts also apply to indemnity agreements. *Chehval v. St. John's Mercy Med. Ctr.*, 958 S.W.2d 36, 37 (Mo. Ct. App. 1997). Courts interpret the contracts by first ascertaining the intention of the parties to the contract. *Boyer v. Sinclair & Rush, Inc.*, 67 S.W.3d 627, 631 (Mo. Ct. App. 2002). Further, to find a contractual obligation to indemnify another party, the contract language setting forth the agreement to indemnify must be "clear and unequivocal." *Coello v. Tug Mfg. Corp.*, 756 F. Supp. 1258, 1263 (W.D. Mo. 1991). Finally, an indemnity contract is to be construed according to the clear and unequivocal expression of

---

[6] While Third-Party Defendants addressed the Missouri choice of law provision in its Motion for Summary Judgment (doc. 15-1, at 6), Defendant Bass Pro failed to brief the issue of the Missouri choice of law provision in its Opposition (doc. 16).

9

the parties' intent embodied in the ordinary meaning of the words used. *Schull Const. Co. v. Koenig*, 80 S.D. 224, 227, 121 N.W.2d 559, 561 (1963).

Here, the Court finds that, under the May 6, 2008 Agreement, Corporate Green's obligations were limited to indemnifying claims arising from the placement of landscaping rocks at the Bass Pro store. Moreover, the facts indicate that the purpose of the agreement was only to govern the rock landscape project and there are no facts to suggest that Plaintiff's injuries occurred in connection with the landscape rock project. The Court reaches this conclusion for several reasons.

First, the parties concede that the indemnity provision of the May 6, 2008 Agreement clearly and unequivocally indemnifies Defendant Bass Pro for acts relating to the rock landscape project. However, the contract language, given its limited nature, does not express the intent to indemnify Defendant Bass Pro for Plaintiff's claim. Under the May 6, 2008 Agreement, Corporate Green's scope of work section specifically states "rocks for islands with light poles and one with fire hydrant" (doc. 15-4, at 8). Had this agreement intended to encompass areas and materials outside the rock landscape project, it would have included numerous references to other areas outside the store which were specifically cited on multiple occasions in the March 27, 2008 Agreement. Third-Party Defendants also point to the limited time span cited in the agreement. The schedule of work section for the May 6, 2008 agreement states a specific date and time for

completion of the work by May 30, 2008, suggesting the contract's limited nature (doc. 15-4, at 4).

Multiple sections in the contract indicate an agreement limited in scope. In addition, Defendant Bass Pro consistently maintains that the May 6, 2008 Agreement does not represent the full scope of the arrangement between the parties. Defendant Bass Pro further asserts that it is the March 27, 2008 Agreement and not the May 8, 2008 Agreement that demonstrates a "continuous relationship of performing landscaping services" between Corporate Green and itself (doc. 16, at 4–5).

Furthermore, Third Party Defendants' reliance on Missouri case law is well founded. The issue in *Chehval*, was whether the court, when looking at the contract language and the agreement as a whole, could conclude that the medical center was obligated to indemnify a physician for his negligent acts. 958 S.W.2d at 40. While the court concluded that the parties' agreement in that case unequivocally expressed the intent to indemnify the physician, the court further discussed distinguishable cases. The court does not apply an indemnity provision when the provision does not express intent to indemnify the conduct at issue. *Id.* Here, the Court agrees with Third-Party Defendants in that few terms in the May 6, 2008 Agreement encompassed the conduct alleged in the suit and there appears to be no intent to indemnify such conduct.

Finally, neither party has alleged that Plaintiff's injuries were the result of anything but the alleged "failure to provide adequate drainage on the walkway outside of the Bass Pro store" (doc. 15-1, at 4). Plaintiff does not assert facts suggesting that the landscaping rocks contributed to the injuries alleged in her claim. Thus, Third Party Defendants are entitled to judgment as a matter of law as to the May 6, 2008 Agreement.[7]

Accordingly, the Court finds that while Defendant Bass Pro has not established that the conduct of the suit is covered by the May 6, 2008 Agreement, the March 27, 2008 Agreement does cover the conduct alleged in this suit.[8] The March 27, 2008 Agreement demonstrates a more continuous and comprehensive relationship between the parties in which Corporate Green had undertaken an obligation to indemnify Defendant Bass Pro for suits arising from the circumstances alleged by Plaintiff.[9]

---

[7] Due to the legal and factual conclusions set forth in this ruling, the Court determines that Defendant Bass Pro has not alleged sufficient facts to assert a third-party demand against Lexington Insurance. The Court removes Lexington Insurance as a third-party defendant. The Court finds that Defendant Bass Pro only asserts facts as to Lexington Insurance's liability as an indemnitor under the May 6, 2008 agreement. Specifically, the April 20, 2011 letter to Corporate Green (doc. 16-2) and the certificate of insurance (doc. 16-3) listing Defendant Bass Pro as an additional insured are persuasive only to support Lexington Insurance as a third-party defendant under the May 6, 2008 agreement, which is now moot.

[8] The Court elects to dismiss the indemnity claim under the May 6, 2008 Agreement without prejudice. The Court notes that at least part of the terms and conditions of the May 6, 2008 Agreement addresses liability for "variations in the operations of the irrigation system" (doc. 15-4, at 9). Furthermore, Defendant Bass Pro is permitted to re-file setting forth facts which establish that, in connection with the May 6, 2008 agreement, Third-Party Defendants agreed to indemnify. However, the agreement, without more facts, does not support a third-party demand for indemnity regarding Plaintiff's claim.

[9] The Court is not persuaded by Third-Party Defendants' argument that the Court must dismiss the Third-Party Demand due to a violation of the scheduling order. First, Defendant Bass Pro asserts, and the Court agrees, that the order did not specifically impose a deadline for third-party demands. Second, while Fed. R. Civ. P. 16(f) provides for the imposition of various sanctions for violations of a scheduling order, such as dismissal, see *Callip v. Harris County Child Welfare Dep't*, 757 F.2d 1513, 1518 (5th Cir. 1985), the Fifth Circuit has noted that a dismissal with prejudice is an "extreme sanction that deprives the litigant of the opportunity to pursue his claim." *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1418 (5th Cir. 1995).

Case 3:10-cv-00674-BAJ-MJU   Document 17   12/21/12   Page 12 of 13

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (doc. 15) is hereby **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** with regard to the May 6, 2008 Agreement but **DENIED** with regard to Corporate Green LLC., under the March 27, 2008 Agreement. All Third Party Plaintiff, Bass Pro Outdoor World, LLC, claims against Corporate Green, LLC and Lexington Insurance Company with regard to the May 6, 2008 Agreement are dismissed without prejudice.

Baton Rouge, Louisiana, December 21, 2012.

_____
BRIAN A. JACKSON CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA