UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BETTY ANNE BURNS                                             CIVIL ACTION

VERSUS

BASS PRO, LLC, ET AL.                      NO.: 3:10-cv-00674-BAJ-RLB

## RULING AND ORDER

While preparing for trial in this matter, the Court developed concerns regarding the Defendant's proffered basis for subject matter jurisdiction. Accordingly, the Court *sua sponte* ordered the parties to brief the issue. Having received the parties' briefs and independently reviewed the record, the Court now concludes that it lacks subject matter jurisdiction because Defendant Bass Pro Outdoor World, LLC ("Bass Pro") failed to show at the time of removal that the amount in controversy likely exceeded $75,000.00, as required to establish subject matter jurisdiction under 28 U.S.C. §§ 1332(a)(1) and 1441. Accordingly, for reasons fully explained below, this action will be remanded to the Twenty-First Judicial District Court for the Parish of Livingston, State of Louisiana, as required by 28 U.S.C. § 1447(c).

## I.   BACKGROUND

This case arises out of an alleged slip-and-fall accident. Specifically, Plaintiff Betty Anne Burns ("Burns") claims that on July 31, 2009 she "slipped and fell on a slime/algae puddle near a drain" located at Bass Pro's retail store in Denham Springs, Louisiana. (Doc. 1-2 at p. 9, ¶ 3). On June 30, 2010, Burns filed a Petition

21JDC-Certified

for Damages in the Twenty-First Judicial District for the Parish of Livingston, State of Louisiana, naming "Bass Pro Denham Springs Development Company, LLC" ("Bass Pro Denham Springs"), and "ABC Insurance Company" as defendants. (*Id.* at p. 9, ¶ 1). Burns alleged that her fall was caused by Bass Pro Denham Springs's negligence, stating that "[t]he conditions [at Bass Pro Denham Springs's] store presented an unreasonable risk of harm . . . which was reasonably foreseeable." (*Id.* at pp. 9–10, ¶¶ 4–5). Burns further alleged that she "sustained injuries to her legs, hips, back and neck," and that "[t]hese injuries . . . caused [her] to suffer grievous bodily pain and suffering, including mental anguish, loss of income and loss of earning capacity, past and future medical expenses, including therapy and possible surgery." (*Id.* at p. 10, ¶ 6). In accordance with Louisiana law, Burns's Petition did not specify the dollar amount of her damages claim. *See* La. C.C.P. Art. 893(A)(1). However, Burns's Petition stated that "[her] damages exceed the amounts required for a jury under the Louisiana Code of Criminal Procedure," and requested "a jury for all issues triable to a jury." (Doc. 1-2 at p. 10, ¶ 8).

In September 2010, Burns requested leave to file her First Amended Petition for Damages, which substituted Bass Pro as a party for Bass Pro Denham Springs. (*See* Doc. 1-2 at pp. 1–2 (Burns's First Amended Petition for Damages)). Burns stated that her request was based on information received from "opposing counsel that the correct party is BASS PRO OUTDOOR WORLD, LLC." (*Id.* at p. 1, ¶ 1). On September 17, the Twenty-First Judicial Court granted Burns's request to

amend, and ordered that her First Amended Petition be filed.   (*Id.* at p. 3 (Order granting Burns leave to amend her petition).[1]

On October 7, 2010, Bass Pro removed Burns's action to this Court under 28 U.S.C. § 1441, asserting that "[t]his Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1)."   (Doc. 1 at ¶¶ 9–10).   Bass Pro explained in its Notice of Removal that removal was made possible by Burns's substitution of Bass Pro for Bass Pro Denham Springs, because "[u]nlike Bass Pro Denham Springs, Bass Pro Outdoor World, LLC is completely diverse from Ms. Burns."   (*Id.* at ¶5).   Bass Pro further stated: "Upon information and belief, the amount in controversy in this case (exclusive of legal interest and costs) exceeds $75,000."   (*Id.* at ¶ 8).

Bass Pro accompanied its Notice of Removal with a Civil Cover Sheet, (Doc. 1-1), as well as portions of the record from the Twenty-First Judicial District Court proceedings, (Doc. 1-2).   These record excerpts included: (1) Burns's First Amended Petition for Damages, (Doc. 1-2 at pp. 1–2); (2) the Twenty-First Judicial District Court's Order granting Burns's request for leave to file her Amended Petition, (*id.* at p. 3); (3) Bass Pro's Answer to Burns's Petition for Damages, (*id.* at p. 4–5); Burns's original Petition for Damages, (*id.* at pp. 9–11); and various requests for notice and summonses, (*id.* at pp. 6–8).   Significantly, Bass Pro's Notice of Removal

---

[1] Burns further sought leave "to substitute the name of Bass Pro Denham Springs Development Company, LLC with the name Bass Pro Outdoor World, LLC." (Doc. 1-2 at p. 1).  Burns explained that this request was at Bass Pro's behest, and therefore would "cause [Bass Pro] no prejudice." (*Id.*).  It appears that the Twenty-First Judicial District Court also granted this request.  (*See id.* at p. 3).

was *not* accompanied by affidavits or other exhibits attesting to the amount in controversy.

On May 7, 2012, Bass Pro filed its Answer to Plaintiff's Petition and First Amended Petition for Damages, which included a third-party demand against third-party defendants Corporate Green, LLC and Lexington Insurance Company (collectively, "Corporate Green"). (Doc. 8). Various motions and rulings followed, none of which are relevant to the issue at hand.

On November 13, 2013, at Burns's request, the Court set a pretrial conference for January 17, 2014, to be followed by trial on February 25. (Doc. 31). Thereafter, the Court reset the pretrial conference to January 22. (Doc. 45).

At no time did Burns seek remand to state court. Indeed, *no* party challenged the basis for this Court's subject matter jurisdiction at any point during the term of this action's pendency in federal court. However, mindful of its "continuing obligation to examine the basis for [its] jurisdiction," *MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990), the Court re-examined Bass Pro's Notice of Removal and accompanying exhibits in advance of the January 22 conference. Based on concerns that Bass Pro may *not* have sufficiently proved the Court's jurisdiction at the time of removal, the Court *sua sponte* ordered the parties to brief the issue by January 28.

Burns, Bass Pro, and Corporate Green have each filed memoranda arguing that the requirements for subject matter jurisdiction under 28 U.S.C. § 1332(a)(1)

4

were met at the time of removal.  (*See* Doc. 46 (Bass Pro's Memorandum); Doc. 47 (Corporate Green's Memorandum); Doc. 48 (Burns's Memorandum)).   Oral argument is not necessary.

## II.   DISCUSSION

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  Indeed, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Id.* (citations omitted).  The Court's "obligation to examine the basis for [its] jurisdiction" is "continuing," and "[t]he issue may be raised . . . by the court *sua sponte,* at any time."  *MCG*, 896 F.2d at 173.

In pertinent part, 28 U.S.C. § 1441 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  The question of "removal jurisdiction [is determined] on the basis of claims in the state court complaint as it exists at the time of removal."  *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995).  "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand."  *Manguno v. Prudential*

*Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

In its Notice of Removal, Bass Pro asserted a single basis for federal subject matter jurisdiction: traditional diversity jurisdiction under 28 U.S.C. § 1332(a). (Doc. 1 at ¶9). Accordingly, the Court will assess whether Bass Pro has proved subject matter jurisdiction under this provision.

### a. *Traditional Diversity Jurisdiction Analysis*

Where a case is removed on the basis of diversity jurisdiction, the defendant must show "(1) complete diversity of the parties and (2) an amount-in-controversy that exceeds $75,000." *Felton v. Greyhound Lines, Inc.*, 324 F.3d 771, 773 (5th Cir. 2003).

### i. Complete Diversity

Here, complete diversity is satisfied. Plaintiff Burns is a citizen of Louisiana. (Doc. 1 at ¶ 5; Doc. 1-2 at p. 9). Defendant Bass Pro is a limited liability corporation, whose "citizenship . . . is determined by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). Bass Pro's sole member is Bass Pro, Inc., a corporation. (Doc. 1 at ¶ 5). In turn, "a corporation [is] a citizen of 'every State and foreign state' in which it is incorporated and the 'State or foreign state' where it has its principal place of business." *Vantage Drilling Co. v. Hsin-Chi Su*, No. 13-20379, ___ F.3d ___, 2014 WL 53691 at *2 (5th

6

Cir. Jan. 7, 2014) (quoting 28 U.S.C. § 1332(c)(1)).  Bass Pro, Inc. is a Delaware corporation with its principal place of business in Missouri.  (Doc. 1 at ¶ 5). Accordingly, Bass Pro is a citizen of Delaware and Missouri, and is, therefore, diverse from Burns. *Harvey*, 542 F.3d at 1080.

Finally, original Defendant ABC Insurance Company is a fictitious company, (Doc. 1-2 at ¶ 1), which may be disregarded for purposes of determining whether jurisdiction exists over this action.  *See* 28 U.S.C.A. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").[2]

### ii.  Jurisdictional Amount

Presence of the jurisdictional amount in this action is less obvious.  As stated, Burns's Petition for Damages did not specify a monetary amount.  "In such a situation, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000." *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999).  "To satisfy the preponderance standard, the removing defendant may support federal jurisdiction either by establishing that it is

---

[2]  Bass Pro Denham Springs, the original named Defendant in this action, is a limited liability company whose members are Louisiana residents.  (Doc. 1 at ¶ 3).  Because Bass Pro Denham Springs is *not* diverse from Burns, *see Harvey*, 542 F.3d at 1080, this action was *not* removable at the outset.  *See Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 546 (5th Cir. 1967) ("[A] nonresident defendant generally cannot remove a case in which a resident defendant also is properly joined, thus defeating complete diversity of citizenship." (footnote omitted)).  However, because Burns later voluntarily substituted Bass Pro as a party for Bass Pro Denham Springs, the diversity of citizenship requirement is established.  *See id.* at 549.

7

'facially apparent' that the claims probably exceed $75,000 or by establishing the facts in controversy in the removal petition or an accompanying affidavit to show that the amount-in-controversy is met." *Felton*, 324 F.3d at 773–74. If the defendant "establishe[s] by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount," the question becomes whether the plaintiff can demonstrate it is "legally certain" she cannot recover more than the jurisdictional amount. *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 387–88 (5th Cir. 2009).

### 1. *Scope of Review*

In their memoranda on the jurisdictional issue, the parties each make new factual representations to show that the amount in controversy exceeds $75,000.00. (*E.g.*, Doc. 46 at p. 4 (Bass Pro's Memorandum stating "Burns's counsel sent a settlement demand of $532,983.00 to Bass Pro's counsel"); Doc. 47 at p. 4 (Corporate Green's Memorandum stating that "[Burns's] lost net earnings ranged from $142,239 to $246,617"); Doc. 48 at p. 2 (Burns's Memorandum stating "the net present value of her future loss [sic] income [is] at least $142,149.00")). In support of these representations, the parties have also submitted various exhibits. (*See* Doc. 46-1 (Randi Ellis Deposition); Doc. 46-2 (Richard Buller Deposition); Doc. 47-2 (same); Doc. 48-1 (Physical Therapy Report & Functional Capacity Evaluation)). Thus, as an initial matter, the Court must decide whether it may properly consider these statements and exhibits in determining whether the jurisdictional amount is

8

satisfied.  The question arises because Bass Pro did *not* file accompanying affidavits or exhibits with its Notice of Removal, nor did its Notice set forth any additional facts in controversy that would support a conclusion that the jurisdictional minimum is satisfied.  (*See generally* Doc. 1).  Instead, Bass Pro's Notice merely "alleged in a conclusional manner that the amount in controversy exceeded the jurisdictional amount," *Simon*, 193 F.3d at 850.  (*See id.* at ¶ 8 ("Upon information and belief, the amount in controversy in this case (exclusive of legal interest and costs) exceeds $75,000.").

For two reasons, the Court is compelled to conclude that it may *not* consider the parties' *new* factual representations in, or exhibits included with, their memoranda in support of subject matter jurisdiction.  First, the law is quite clear that whether removal jurisdiction is present depends on the claims as they are stated "at the *time of removal*." *Cavallini*, 44 F.3d at 264 (emphasis added); *Manguno*, 276 F.3d at 723 (same).  The Court finds no ambiguity in this rule, but even if it was ambiguous, "[a]ny ambiguit[y] [would be] construed *against* removal because the removal statute should be *strictly construed* in favor of remand." *See Manguno*, 276 F.3d at 723 (emphasis added).  The parties submitted their affidavits and additional facts in controversy more than three years *after* Bass Pro filed its Notice of Removal.  Quite simply, this Court would have to disregard the literal meaning of "at the time of removal" to conclude that the parties' *new* exhibits and

facts in controversy are properly taken into account when determining whether the jurisdictional minimum is satisfied.

Second, the Fifth Circuit has instructed that when establishing the jurisdictional minimum, "the removing defendant may support federal jurisdiction . . . by establishing the facts in controversy *in* the removal petition or *an accompanying* affidavit to show that the amount-in-controversy is met." *Felton*, 324 F.3d at 773–74 (emphasis added). There is little in this rule to suggest that a removing defendant may submit for the Court's consideration affidavits or additional facts in controversy at some date *after* filing its notice of removal. And, again, even if the rule contained some ambiguity, any ambiguity would be construed *against* removal. *See Manguno*, 276 F.3d at 723.

In reaching this conclusion, the Court pauses to note that the Fifth Circuit has *not* always been consistent in its articulation of *when* additional evidence must be submitted as proof that the jurisdictional minimum is established. *See Felton*, 324 F.3d at 773–74 ("To satisfy the preponderance standard, the removing defendant may support federal jurisdiction . . . by establishing the facts in controversy *in* the removal petition or *an accompanying* affidavit to show that the amount-in-controversy is met.") (emphasis added), *and Simon*, 193 F.3d at 850 (indicating that removing defendant should "file[] an affidavit *with* its Notice of Removal []or set forth any facts in controversy *in* that Notice" in order to establish the jurisdictional minimum) (emphasis added); *Allen v. R & H Oil & Gas Co.*, 63

10

F.3d 1326, 1335 (5th Cir. 1995) ("[A] removing attorney may support federal jurisdiction by setting forth the *facts* in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount.).  *But see Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000) ("While *post*-removal affidavits may be considered in determining the amount in controversy at the time of removal, such affidavits may be considered only if the basis for jurisdiction is ambiguous at the time of removal.") (emphasis added). Certainly, additional guidance on this issue from the Circuit is welcomed.  In the meantime, the Court will apply the test for determining whether the jurisdictional minimum is satisfied as it is articulated in the Fifth Circuit's most recent jurisprudence, which states that any additional evidence in support of the jurisdictional minimum must "accompany[]" the removal petition.  *Felton*, 324 F.3d at 773; *accord Garcia v. Koch Oil Co. of Texas Inc.*, 351 F.3d 636, 639 (5th Cir. 2003) ("If the value of the claims is not apparent, then the defendants may support federal jurisdiction by setting forth the *facts*—either in the removal petition or by affidavit—that support a finding of the requisite amount.") (quotation marks and alterations omitted).   This rule accords with the Fifth Circuit's unfaltering admonishment that whether removal jurisdiction exists depends on the claims as they are stated "at the *time of removal*."   *Cavallini*, 44 F.3d at 264 (emphasis added); *Manguno*, 276 F.3d at 723 (same).  Accordingly, the Court will *not* consider the parties' additional evidence submitted with their recent memoranda.

In sum, because Bass Pro failed to file affidavits or other evidence with its Notice of Removal, and because it failed to set forth "any facts in controversy in that Notice" that were not already stated in Burns's Petition for Damages, "removal was proper only if the jurisdictional amount was 'facially apparent' from the complaint." *Simon*, 193 F.3d at 850 (emphasis added).

> ### 2. Whether it is "facially apparent" from Burns's Petition for Damages that her claim likely exceeds $75,000.00

Burns's Petition for Damages includes one paragraph regarding the nature and extent of the damages she sustained. In full, that paragraph states:

> As a direct and proximate result of Bass' [sic] negligence, your Plaintiff sustained injuries to her legs, hips, back and neck which have caused her to seek medical treatment for those injuries. These injuries have caused the Plaintiff to suffer grievous bodily pain and suffering, including mental anguish, loss of income and loss of earning capacity, past and future medical expenses, including therapy and possible surgery.

(Doc. 1-2 at p. 10, ¶6).

In their respective memoranda, the parties each contend, based on this paragraph, that it is facially apparent that Burns's claims will likely exceed $75,000.00, exclusive of interest and costs. (*See* Doc. 46 at p. 4; Doc. 47 at p. 3; Doc. 48 at p. 1). The parties also point to the fact that Burns's Petition requested a jury trial, indicating her belief that her damages exceeded $50,000.00. (Doc. 46 at p. 4; Doc. 48 at p. 1). *See* La. C.C.P. Art. 1732(A)(1) ("A trial by jury shall not be available in . . . [a] suit where the amount of no individual petitioner's cause of action exceeds fifty thousand dollars exclusive of interest and costs . . . .").

Although a close call, the Court determines that it is *not* facially apparent from Burns's Petition for Damages that the amount in controversy exceeds $75,000.00.    In reaching this conclusion, the Court heeds the Fifth Circuit admonishment that "removal cannot be based simply upon conclusory allegations." *Felton*, 324 F.3d at 774 (quotation marks omitted).    Certainly the injuries and treatments described in Burns's Petition create the *potential* for recovery in excess of $75,000.00.    The mere *potential* for recovery in excess of the jurisdictional minimum, however, is not enough.    Rather, Fifth Circuit law is clear that to satisfy the jurisdictional minimum, the *defendant* must show that it is *more likely than not* that the plaintiff will recover more than the jurisdictional minimum.    *See Allen*, 63 F.3d at 1336 (instructing that the jurisdictional minimum is not established where the defendant shows merely that the plaintiff "could well" recover more than the jurisdictional minimum); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1411 (5th Cir. 1995) (instructing that the jurisdictional minimum is not established where the defendant shows merely that there is "some possibility" that the plaintiff will recover more than the jurisdictional minimum).

Simply put, the injuries alleged here are too vaguely stated to provide the Court any degree of confidence that the Petition makes out a claim for more than $75,000.00.    Burns's Petition states, without providing *any* detail, that she "sustained injuries to her legs, hips, back and neck." (Doc. 1-2 at p. 10, ¶6).    The Petition asserts that these injuries have "caused [Burns] to seek medical

treatment," but, again, does not specify what that "treatment" was. (*Id.*).  The Petition goes on to state that "[t]hese injuries have caused the Plaintiff to suffer grievous bodily pain and suffering, including mental anguish, loss of income and loss of earning capacity, past and future medical expenses." (*Id.*).  However, these are customary categories of damages set forth in personal injury actions, which provide the court with little guidance as to the *actual* damages claimed by Burns. *See Allen*, 63 F.3d at 1330 ("The general rule is that each plaintiff who invokes diversity of citizenship jurisdiction must allege damages that meet the dollar requirement of § 1332.").   Finally, the Petition states without elaboration that Burns might require future treatment, "including therapy and possible surgery." (*Id.*).  Again, this is simply not enough to provide the Court with a reliable measure of Burns's claim.

Indeed, the only reliable indicia of the value of Burns's claim contained on the face of the Petition is its assertion that "[Burns's] damages exceed the amounts [sic] required for a jury under the Louisiana Code of Civil Procedure"—specifically, $50,000.00.   La. C.C.P. Art. 1732(A)(1).   $50,000.00, however, is a substantially different sum than $75,000.00.   Without more, the Court cannot conclude that the jurisdictional minimum is met.

In concluding that it is not facially apparent from Burns's Petition that the amount in question exceeds $75,000.00, this Court is guided by three cases considered by the Court of Appeals for the Fifth Circuit, where that court had to

14

determine whether the jurisdictional minimum was satisfied based on the face of the state court petition: the first is *Luckett v. Delta Airlines, Inc.*, where the court determined it was "facially apparent" that the amount-in-controversy requirement was met; the second is *Simon v. Wal-Mart Stores*, where the Fifth Circuit determined that it was not; the third is *Gebbia v. Wal-Mart Stores, Inc.*, where, again, the Fifth Circuit determined that the minimum was satisfied.

In *Luckett*, the plaintiff sued Delta Airlines in Louisiana state court after the company lost her luggage containing her heart medication on a cross-country trip from Monroe, Louisiana to Chino, California. 171 F.3d 295, 297 (5th Cir. 1999). The plaintiff claimed that by failing to locate her luggage within a reasonable time, Delta caused her to become ill, and to be transported to Chino Valley Hospital, where she was diagnosed as suffering from congestive heart failure, pulmonary edema, and respiratory distress. *Id.* The plaintiff was admitted to the hospital, where she stayed for six days, and was unconscious for a portion of the time. *Id.* In accordance with Louisiana law, the state-court petition did not specify the dollar amount of plaintiff's damages claim. *Id.* at 298.

Delta removed the case to the Western District of Louisiana, and then moved for summary judgment on the basis that plaintiff's action had prescribed. *Id.* After finding that it had jurisdiction, the district court dismissed the suit with prejudice based upon prescription. On appeal, the Fifth Circuit ultimately affirmed on the merits. *Id.* at 300. First, however, it addressed whether the district court properly

determined that it had jurisdiction under § 1332.  *Id.* at 298.  In *Luckett*, as here, there was no question that complete diversity between the parties was satisfied; "the sole jurisdictional issue [was] whether the district court erred in deciding that the amount in controversy exceeded $75,000."  *Id.*  After recounting the allegations in the complaint, and reciting the relevant law, the court concluded that Delta carried its burden of proving the amount in controversy.  *Id.*  In reaching this conclusion, the court noted that "[i]n the complaint . . . [plaintiff] alleged damages for property, travel expenses, an emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation, and her temporary inability to do housework after the hospitalization."  *Id.*  On this basis, the court determined that "the face of the complaint" made it likely that plaintiff's claims exceeded $75,000. *Id.*

Compared to the plaintiff in *Luckett*, the Burns Petition provides little for this Court to rely on in determining that her claims exceed the jurisdictional minimum.  Unlike the *Luckett* plaintiff, who made specific allegations regarding the exact medical conditions suffered as a result of the defendant's conduct, the Burns Petition makes nonspecific allegations of "injuries to her legs, hips, back, and neck"; unlike the *Luckett* plaintiff, who claimed that she was forced to endure an emergency ambulance trip and a six-day stay in the hospital, thereby providing the court with indicia of the gravity of her injuries as well as the cost of her care, Burns's Petition states merely that her injuries "caused her to seek medical

16

treatment," in addition to "grievous bodily pain and suffering" and "mental anguish"; and finally, unlike the *Luckett* plaintiff, who claimed that following her hospitalization she suffered a temporary inability to do housework, the Petition here simply states that Burns lost income and earning capacity for an unspecified period of time.  (Doc. 1-2 at p. 10, ¶6).  In sum, the Petition here falls short of the showing that the Fifth Circuit found sufficient to prove that the jurisdictional minimum was facially apparent in *Luckett*.

Indeed, the petition at issue here is more analogous to the petition at issue in *Simon v. Wal-Mart Stores*, where the Fifth Circuit determined that the jurisdictional minimum was *not* satisfied.  193 F.3d at 851.  In *Simon*, Dixie Lee Simon and Elwin Simon sued Wal-Mart in Louisiana state court after a purse-snatching that occurred in Wal-Mart's parking lot.  Dixie Lee alleged that as she was walking in the parking lot, a car drove past, and "her purse, wrapped around her arm, was suddenly and unexpectedly grabbed causing her to be dragged by the car the distance of several parking spaces to the front of the Wal–Mart Store before being released."  *Simon*, 193 F.3d at 850 (alterations omitted).  As a result of this incident, Dixie Lee "suffered bodily injuries and damages including but not limited to a severely injured shoulder, soft-tissue injuries throughout her body, bruises, abrasions and other injuries to be shown more fully at trial, and . . . incurred . . . medical expenses."  *Id.* at 849–50.  Further, Elwin sought "reasonable" damages for

17

loss of consortium. *Id.* at 850. In *Simon*, as here, the plaintiffs did not plead a monetary amount of damages.

Wal–Mart removed the action to federal district court on the basis of diversity jurisdiction. *Id.* Again, there was no question that complete diversity between the parties was satisfied. *Id.* However, as to the jurisdictional amount, Wal–Mart's Notice of Removal "merely alleged that 'the matter in controversy herein exceeds the sum of $75,000, exclusive of interests and costs.'" *Id.* After a trial, a jury awarded the plaintiffs $30,000. *Id.* at 849.

Wal-Mart appealed.   The Fifth Circuit vacated the judgment without reaching the merits because it determined that Wal-Mart failed to carry its burden of proving by a preponderance of the evidence that the jurisdictional minimum for diversity jurisdiction was met.   First, the Court noted that "Wal-Mart neither filed an affidavit with its Notice of Removal nor set forth any facts in controversy in that Notice" which would support a finding of the requisite amount.   "Accordingly, removal was proper only if the jurisdictional amount was 'facially apparent' from the complaint." *Id.* at 850. The Court then determined that the *Simon* petition was insufficiently plead to make it more likely than not that the plaintiffs' damages exceeded the jurisdictional minimum.

In determining that Wal-Mart failed to carry its burden, the court drew an instructive distinction between the *Luckett* petition and the *Simon* petition.

> *Luckett* involved a tort action brought by a plaintiff whose luggage, containing her heart medication, was lost by the defendant airline.

18

Luckett became severely ill after not taking the medication and *specifically* alleged damages for property, travel expenses, an emergency ambulance trip, a six-day stay in the hospital, pain and suffering, humiliation, and temporary inability to do housework following her hospitalization. In contrast, the instant complaint alleged, with little specificity, damages from *less severe* physical injuries—an injured shoulder, bruises, and abrasions—and *unidentified* medical expenses for Simon, plus loss of consortium for Elwin. It did not allege any damages for loss of property, emergency transportation, hospital stays, *specific* types of medical treatment, emotional distress, functional impairments, or disability, which damages, if alleged, would have supported a substantially larger monetary basis for federal jurisdiction. On the basis of the Simons' allegations, we must conclude that it was not "facially apparent" that the amount of damages would exceed $75,000.

*Id.* at 850–51 (emphasis added).

Here, the injuries suffered by Burns are identified with even *less* description than those at issue in *Simon*, where the Petition specifically described *some* of the injuries sustained (*e.g.*, "bruises" and "abrasions). Accordingly, in light of *Simon*, it follows that "[o]n the basis of the [Burns's] allegations, . . . it was not 'facially apparent' that the amount of damages would exceed $75,000." *See id.* at 851.

In arguing to the contrary, Bass Pro and Corporate Green draw the Court's attention to *Gebbia v. Wal-Mart Stores, Inc.*, where the Fifth Circuit determined that the jurisdictional minimum *was* facially apparent from the petition. 233 F.3d at 883. (*See* Doc. 46 at p. 4 n.7; Doc. 47 at pp. 3–4). *Gebbia* involved a similar claim to that at issue here: plaintiff sued Wal-Mart Stores in Louisiana state court after she "suffered . . . injuries when she went into the produce section of the store and slipped and fell in liquid, dirt, and produce on the floor." 233 F.3d at 881. As

19

described by the Court of Appeals, plaintiff's petition "alleged damages for medical expenses, physical pain and suffering, mental anguish and suffering, loss of enjoyment of life, loss of wages and earning capacity, and permanent disability and disfigurement," but, again, "did not pray for a specific amount of damages." *Id.*

Wal-Mart removed the action to the district court, claiming diversity jurisdiction. *Id.* After pre-trial discovery commenced, but before trial was scheduled to begin, plaintiff filed a motion to remand, asserting "that the $75,000 amount in controversy requirement was not satisfied." *Id.* at 882. The district court denied plaintiff's motion, and further denied plaintiff's motion for reconsideration. *Id.* The action was tried to a jury, which found for Wal-Mart. *Id.* Plaintiff then appealed, arguing that the district court erred in denying her motion to remand. *Id.*

The sole issue on appeal was "whether the district court erred in deciding that the amount in controversy exceeded the sum or value of $75,000, exclusive of interests and costs." *Id.* Proceeding according to the "clear analytical framework for resolving disputes concerning the amount in controversy for actions removed from Louisiana state courts pursuant to § 1332(a)(1)," the Court of Appeals determined that it *was* "'facially apparent' from Plaintiff's original petition that the claimed damages exceeded $75,000." *Id.* at 882–83. The Court explained:

> Plaintiff alleged in her original state court petition that she sustained injuries to her right wrist, left knee and patella, and upper and lower back. Plaintiff alleged damages for medical expenses, physical pain and suffering, mental anguish and suffering, loss of enjoyment of life,

loss of wages and earning capacity, and permanent disability and disfigurement.    Such allegations support a substantially larger monetary basis to confer removal jurisdiction than the allegations reviewed in *Simon,* and therefore the district court did not err in denying Plaintiff's motion to remand.

*Id.* at 883.

Certainly there are similarities between the alleged damages contained in Burns's Petition, and those observed by the Fifth Circuit in *Gebbia*.   However, important distinctions remain.   First, as did the *Luckett* petition, the *Gebbia* petition alleged plaintiff's injuries with greater specificity than did Burns's Petition. (*Compare Gebbia*, 233 F.3d at 883 (describing injuries to plaintiffs' "*right* wrist, *left* knee and *patella*, and *upper and lower* back), *with* Doc. 1-2 at p. 10, ¶ 6 (stating only that Burns "sustained injuries to her legs, hips, back and neck," without making any attempt to describe the injuries with particularity).   Further, and perhaps more significantly, the *Gebbia* petition alleged that plaintiff was *permanently* disabled and disfigured.   *See Gebbia*, 233 F.3d at 883.   Conversely, there is *no* indication from Burns's Petition as to how long she anticipated suffering the effects of her injuries, much less that she was permanently disabled.   (*See* Doc. 1-2 at p. 10, ¶ 6).

At bottom, this Court determines that the Petition at issue here is more like that addressed by the Fifth Circuit in *Simon*, and less like those addressed in *Luckett* and *Gebbia*.   Accordingly, and for all the reasons already explained, Bass Pro has failed to carry its burden of proving by a preponderance of the evidence that

the amount in question exceeds the jurisdictional minimum for diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

## III.   CONCLUSION

In sum, it is impossible for this Court to conclude that it is "facially apparent" from Burns's Petition that 28 U.S.C. § 1332(a)'s amount in controversy is satisfied. And because Bass Pro did not include any affidavits or additional facts in controversy with its Notice of Removal, the Court lacks any other means to determine that the minimum threshold for diversity jurisdiction is met. Thus, Bass Pro has failed to prove the existence of federal subject matter jurisdiction by a preponderance of the evidence. *See Felton*, 324 F.3d at 773–74. Having no basis to exercise jurisdiction over Burns's claims, the action "shall be remanded" pursuant to 28 U.S.C. § 1447(c).

Accordingly,

**IT IS ORDERED** that this action is **REMANDED** to the Twenty-First Judicial District Court for the Parish of Livingston, State of Louisiana.

Baton Rouge, Louisiana, this ___ day of February, 2014.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

22